IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEANETTE MELLERSON** | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. L-01-2090 |
| | : | (Magistrate Judge Grimm) |
| **JOANNE B. BARNHART**, Commissioner, Social Security Admin. | : | |
| Defendant | : | |
| | ...oOo... | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
PETITION FOR ATTORNEYS' FEES AND COSTS**[1]

Defendant, by and through counsel, Thomas M. DiBiagio, United States Attorney for the District of Maryland, and Nadira Clarke, Assistant United States Attorney for said District, hereby respond to Plaintiff's Petition for Attorneys' Fees and Costs and states as follows:

**I. INTRODUCTION**

This case involves claims filed by plaintiff, Jeanette Mellerson, against the Commissioner of the Social Security Administration ("SSA" or "the Agency") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq. ("Rehabilitation Act") in connection with her non-selection for a GS-7 Supply Technician position posted in August 1994.

Plaintiff's original complaint sought damages in the amount of $175,000. Her

---

[1] Defendant's Exhibits 1-5 will be assembled and filed separately.

amended complaint more obliquely referenced compensatory damages, including earnings, and other related work benefits. See Amended Complaint, p. 8. It also included a request for a permanent restraining order against SSA. Id. Following mediation before United States Magistrate Judge Grimm, the parties settled the liability portion of this case for $46,618. Pursuant to the terms of the settlement agreement plaintiff was considered a "prevailing party" thereby entitling her to submit a petition for fees to the Court. Whether the settlement achieved by plaintiff's counsel actually warrants an award of such fees is the question presented here.

The settlement reached in this case ($46,618) constitutes approximately 26.6 % of plaintiff's original demand for compensatory damages. Plaintiff's request for $137,717 in attorneys' fees and costs, in contrast, is more then 78.7% of her original demand for damages. Plaintiff has achieved a de minimus or technical victory. Under 42 U.S.C. § 2000e(5)(K), her request for attorneys' fees should be denied. Alternatively, to the extent that the Court is inclined to exercise its discretion to award plaintiff any fees, the amount should reflect the degree of success obtained in light of the relief requested. Under this analysis, plaintiff would only be entitled to 26.6% of the fees requested.

## II. FACTUAL BACKGROUND

Plaintiff began her career with SSA in 1981. Her first position was a WG-5 Custodial Work Inspector in the Buildings Operations Branch. In December 1990, plaintiff was reassigned to a WG-5 Motor Vehicle Operator position within the Receiving, Storage and Issue Branch. In September 1991, in accommodation of a leg cramp condition suffered by plaintiff, she was reassigned to a GS-5 Supply Technician position.

In August 1994, SSA posted a vacancy announcement for a GS-7

Supply Technician position. Plaintiff applied for the position, and because she possessed the minimum qualifications, she was placed on the Best Qualified ("BQ") List along with seven other candidates. The eight candidates on the BQ list included four black males, two black females, and two white males. No interviews were conducted. Instead, the application packages for each candidate were forwarded to the recommending official, Harold Brittingham, who, following review of the application packages, recommended Howard Saks, a 34 year old white male. Mr. Saks was selected on October 1, 1994. He was considered the most desirable candidate because of his educational achievements (B.S. degree), his work experience with statistical sampling and inventory, and his exemplary work record . Plaintiff, in contrast, only had an A.A. degree, and she lacked experience in writing, statistical sampling, and inventory – skills desirable for the position.

In the year 2000, plaintiff was promoted to a GS-7 position at the SSA. Since that time she has left her position and has been receiving Worker's Compensation benefits in connection with an injury unrelated to this action.

On July 17, 2001, plaintiff filed a complaint in this Court as a pro se plaintiff. On February 8, 2003, in lieu of filing an answer, and consistent with the typical practice in this district, defendant filed a motion to dismiss, or in the alternative, motion for summary judgment.[2]

---

[2] In fact, the permissive filing of dispositive motions before discovery in Title VII cases is fairly common place in this Court. See Herring v. Thompson, AMD-01-3824 (Defendant filed motions May 2002, and December 2002; Orenge v. Veneman, 218 F. Supp. 2d 758, 761-62 (D.Md. 2002) (Chasanow, J.) (Defendant filed motions June 2000, and January 2002); Wakid v. Evans, AW-01-2443 (Defendant filed motions November 2001, and May 2003); Scott-Brown v. Cohen, 220 F. Supp. 2d 504 (2002), aff'd, 2002 WL 31888217 (Defendant filed motions March 2001, and June 2002); Ward v. Widnall, DKC-98-1273, 1999 WL 964483 (4th Cir. 1999) (Defendant filed motions June 1998, and October 2000); Leach v. Shalala, DKC-00-2170 (Defendant filed motions November 2000, and July 2001); Allen v. Rumsfeld, AW-01-2501

On May 23, 2003, counsel from Piper Rudnick LLP (Tracey G. Turner, Jonathan S. Nash, David W. Stamper, and Amy Beth Leasure) and the Washington Lawyers' Committee for Civil Rights & Urban Affairs (Susan Huhta) entered their appearance on a pro bono basis. Shortly after, plaintiff filed a Rule 56(f) motion for time to conduct discovery and oppose defendant's motion to dismiss.

On August 8, 2002, the Court dismissed defendant's motion to dismiss, or in the alternative, motion for summary judgment as temporarily premature. See Memorandum from Judge Legg dated August 8, 2002. The Court indicated that it did so with reluctance in light of the deadlines that plaintiff had missed. Id. As an aid to discovery the Court established an aggressive discovery schedule in which all discovery would be complete on or before December 15, 2002. The order not only established a schedule, but specified a discreet and narrow set of documents to be produced. Pursuant to the Court's order, plaintiff would then be required to respond to defendant's previously filed summary judgment motion within six days.

During the Court ordered discovery, the parties engaged in an exchange of information consisting primarily of document production. Defendant produced documents outlined in the Court's August 8, 2002 order and noticed and took plaintiff's deposition. Defendant also responded to additional discovery propounded by plaintiff. Plaintiff, in turn, produced documents to the defendant, and noticed the deposition of eight fact witnesses, and a Rule 30(b)(6) deposition covering ten subject matter areas.

The discovery period was cut short, however, on October 30, 2002, when the defendant, with plaintiff's consent, requested that the case be referred to a magistrate for

---

(Defendant filed motions May 2002, and March 2003).

mediation. See Letter from Assistant United States Attorney Nadira Clarke, dated October 30, 2002, attached hereto as Exhibit One. Defendant's counsel candidly disclosed that a "primary motivation for pursuing settlement at this juncture is to limit litigation costs, including the possibility of attorneys' fees. Id. Thus, discovery in this case was very limited. It lasted from August 8, 2002 to October 30, 2002 – less then three months. Critical to understanding plaintiff's inflated petition for attorneys' fees and costs, however, is an understanding of her counsel's conduct after this case was referred to a magistrate for mediation.

Immediately after this case was referred to a magistrate, plaintiff appropriately cancelled all scheduled deposition. See letter from Carolyn Weiss, dated November 1, 2002, attached as Exhibit Two. Inexplicably, however, four days later, plaintiff's counsel wrote a letter in which she was apparently compelled to share her concerns about the then cancelled deposition of witness Harold Brittingham. See Letter from Carolyn Weiss, dated November 5, 2002, attached hereto as Exhibit Three ("Although Brittingham's deposition has been postponed, some of your statements were of such concern to us that we have decided to address them immediately."). Her recitation of legal theories and threats of future legal action were perplexing in light of the stay of litigation. See letter from Assistant United States Attorney Nadira Clarke, dated November 6, 2002, attached hereto as Exhibit Four ("It was my understanding that we requested a referral for court supervised mediation in this case because there was a genuine desire to evaluate the possibility of settlement at the earliest possible point. The tone of your letter suggests that perhaps your goals have changed.").

Plaintiff's counsel employed the same tactics on November 8, 2002, when she wrote a five page letter challenging defendant's responses to certain discovery requests. See

5

Letter from Carolyn Weiss, dated November 8, 2002, attached hereto as Exhibit Five. Acknowledging that "discovery has been stayed" and expressing the hope "that mediation will be successful and will moot outstanding discovery disputes[,]" plaintiff nevertheless invested the time and expense in drafting a letter that outlined her concerns with defendant's discovery responses and even went so far as to re-write several requests in the "spirit of compromise." Id. Plaintiff's counsel explained that "without access to this information, we have no choice but to assume the worst which will be reflected in our settlement position." Id. In the face of plaintiff's unrelenting efforts to re-initiate discovery battles, defendant simply reiterated the purpose of mediation – to quickly and efficiently resolve the case without engaging in protracted discovery disputes. See Letter from Assistant United States Attorney, Nadira Clarke, dated November 14, 2002.

Now plaintiff submits a petition for attorneys' fees and costs in which she justifies grossly inflated numbers with the excuse that defendant thwarted her efforts to conduct discovery. Plaintiff's Memorandum in Support of Plaintiff's Petition for an Award of Attorneys' Fees and Costs ("plaintiff's petition"). Her description is inaccurate and unfair. Her request for attorneys' fees should either be denied or greatly reduced.

### III. LEGAL STANDARD

42 U.S.C. § 2000e(5)(k) permits a district court to use its discretion in awarding a prevailing party in a Title VII suit attorneys fees and costs. It provides in pertinent part: "[i]n any action or proceeding under this title the court, in its discretion, <u>may</u> allow the prevailing party . . . a reasonable attorney's fee." Id. (emphasis added). In construing attorneys' fees requests under Title VII, the Fourth Circuit has noted "[t]he word 'may' means just what it says' that a court has

discretion to award (or not award) attorneys fees." Sheppard v. Riverview, 88 F.3d 1332, 1335 (4th Cir. 1996) (analyzing a fee request under Title VII). "Plainly, if Congress had wished to require recovery of attorney's fees, it would have provided that courts 'shall' grant fees instead of that they 'may' do so." Id. (citing Russell v. United States, 464 U.S. 16, 23 (1983)).

In determining whether to award a plaintiff attorneys fees, courts conduct a two-part inquiry. First, the court determines whether the plaintiff was the prevailing party. With regard to the prevailing party inquiry, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 112 (1992).

If the court concludes that the plaintiff is a prevailing party, then the court examines the reasonableness of the fees requested to arrive at a "reasonable fee." Farrar v. Hobby, 506 U.S. 103, 111-14 (1992). Primary to the consideration of the reasonableness of the fee award is the degree of success obtained. Id. at 114. "Although the 'technical' nature of a nominal damage award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." Id. (emphasis added). In fact, in cases such as this where a private litigant is seeking compensatory damages, "a district court, in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Id. (citing Riverside v. Rivera, 477 U.S. 561 (1986); see also Hensley v. Eckerhart, 461 U.S. 424, 436 (1976)("the most critical factor [in awarding fees] is the degree of success obtained."). "Such a comparison [results obtained versus relief sought] promotes the court's 'central' responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." Farrar, 506 U.S. at 114-15 (quoting Blanchard v. Bergeron, 489 U.S.

87, 96 (1989)).

More importantly, the Supreme Court has held that after the district court considers "the amount and nature of the damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, (citation omitted), or multiplying 'the number of hours reasonably expended . . . by a reasonably hourly rate.'" Farrar, 506 U.S. at 115 (quoting Hensley, 461 U.S. at 433).  For example, in Farrar, the Supreme Court affirmed the holding of the Fifth Circuit of an award of no fees to a prevailing plaintiff who only recovered nominal damages ($1.00).  Similarly, the Fourth Circuit also vacated an award of $98,828.28 in attorneys' fees and costs by the district court on the grounds that plaintiff only recovered nominal damages and was not entitled to any fee.  Johnson v. City of Aiken, 278 F.3d 333, 338-39 (2002).  In reaching this conclusion, the Fourth Circuit stated "'[i]n sum, because Johnson and Vickers' only success was obtaining an award of nominal damages, we conclude that the only appropriate award under § 1988 was none at all, and we therefore vacate the award." Id.  See Carter v. Burch 34 F.3d 257, 266 (4th Cir. 1994)(affirming the district court's order refusing to grant plaintiff's counsel attorney's fees where a plaintiff only recovered nominal damages).

IV.  ARGUMENT

A. The Only Reasonable Fee to Award Plaintiff is No Fee at All.

"In some circumstances, even plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." Farrar, 506 U.S. at 115.  The rationale behind this rule is that plaintiffs who recover nominal damages have in

essence failed to prove an essential element of their claim for monetary relief, making the "only reasonable fee . . . no fee at all." Id. As Justice O'Connor noted in her concurring opinion in Farrar:

> In the context of this litigation, the technical or *de minimus* nature of Joseph Farrar's victory is readily apparent" He asked for a bundle and got a pittance. While we hold today that this pittance is enough to render him a prevailing party, *ante*, at 574, it does not by itself prevent his victory from being purely technical. It is true that Joseph Farrar recovered something. But holding that any ward of nominal damages renders the victory material would 'render the concept of *de minimus* relief meaningless. *Every* nominal damage award has as its basis a finding of liability, but obviously many such victories are Pyrrhic ones.

Id. At 120 (citations omitted).

Justice O' Connor further recognized that even if a plaintiff obtains nominal damages, if he or she has achieved some other important public or social goal by prevailing in the litigation, courts may factor this in when determining whether to award fees. Id. at 121-22. However, in cases such as the present one, where the plaintiff achieved no further public or social goal "other than occupying the time and energy or counsel, court, and client," the only reasonable fee is no fee at all. Id. In sum, Section 1988 is not "a relief Act for lawyers;" "rather, "it is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory." Id. (quoting Riverside, 477 U.S. 561, 588).

Here, at best plaintiff achieved a technical or Pyrrhic victory. She filed suit seeking injunctive relief and $175,000 in compensatory damages. After limited discovery, she

entered into a settlement where she received payment in the amount of $46,618 – 26.6 % of her original claim – a mere pittance in relation to her original claim.  Furthermore, plaintiff's case neither presented nor sought to resolve an important public goal.  Plaintiff's fee petition characterized SSA as an agency with a long and sordid history of discrimination in a thinly veiled effort to make her own case a crusade of sorts to rid the agency of illegal discrimination.  Her claims, however, were far more discreet – she didn't receive a GS-07 job she applied for.  Nothing more.  Plaintiff's case did not present any significant legal issue, and she did not obtain any equitable relief (despite her request) or any other far reaching goal.  "[O]ne searches these facts in vain for the public purpose this litigation might have served."  Farrar, 506 U.S. at 578.

In light of plaintiff's de minimus, technical victory that achieved no further public goal other than a nominal damage award to plaintiff, this Court should exercise its discretion to award the plaintiff the only reasonable fee – no fee at all.

> **B.    Alternatively, if the Court Finds that Plaintiff is Entitled to Attorneys' Fees, it Should Exercise Its Discretion to Award a Reasonable Fee that is Commensurate with the Results Obtained.**

The Fourth Circuit has repeatedly recognized that when awarding a prevailing party fees the district court should reduce any fee award to account for limited success.  Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629 (1995) (citation omitted) ("Farrar reiterated the touchstone of an attorney's fee award first articulated in Hensley: 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"); Sheppard, 88 F.3d at 1335 ("the award fee is discretionary . . . and that concerns of proportionality do play a part in the analysis"); Hezel v. Prince William County, 89 F.3d 169, 173-74 (4th Cir. 1996) ("Because Hetzel has gained but an insignificant portion of the relief she originally requested and

because she has failed to prevail on her most consequential claims, she is entitled only to a fraction of her attorney's fees).

In <u>Hetzel</u>, after vacating a jury's award of $500,000 in compensatory damages on the grounds that it was grossly excessive in light of the limited evidence presented at trial, the Fourth Circuit also vacated an award of attorney's fees in the amount of $176,293. In doing so, the Court recognized that where the recovery private damages was the purpose of the civil rights litigation [like it is in this case], "the district court, in fixing fees, <u>is obligated</u> to give primary consideration to the amount of damages awarded as compared to the amount sought.'" <u>Id</u>. at 173 (quoting <u>Farrar</u>, 506 U.S. at 114) (emphasis added). In concluding that the fee award also should be vacated, the Court noted that "[w]here Hetzel's complaint requested $9.3 million in damages, back pay, retroactive promotion to sergeant, and other injunctive relief, she will ultimately receive only a pittance of her original damages request and no injunctive relief, promotion nor back pay." <u>Id</u>. at 173.

In this case, an analysis of the degree of success obtained by plaintiff is noteworthy. Plaintiff recovered only 26.6 % of the demand contained in her first complaint, not to mention the absence of an award of injunctive relief. If the total fees are reduced to reflect the technical victory obtained, plaintiff would only be entitled to 26.6% of her the fees and costs currently sought. In sum, "<u>Farrar</u> was designed to prevent a situation in which a client receives a pyrrhic victory and the lawyers take a pot of gold." <u>Sheppard</u>, 88 F. 3d at 1339. In this case, the Court should exercise its discretion to reduce the fee award to be commensurate with the success obtained by plaintiff in settlement.

      **C.**      **<u>Plaintiff Has Failed to Comply with the Requirements for an Award</u>**

**of Fees, Her Fees are Excessive, and Many of the Fees Plaintiff Seeks are Not Recoverable**

The Court is justified in eliminating all duplicative, unproductive, excessive or otherwise unnecessary fees. See e.g., Hensley, 461 U.S. at 434; Gundenkauf v. Staffer Communications, Inc., 158 F.3d 1074 (10th Cir. 1998). The excessive and otherwise unnecessary hours billed by plaintiff's counsel are set forth below.

First, plaintiff accuses defendant of engaging in obstructionist tactics thereby requiring the expenditure of substantial resources. See Fee Petition, p. 10. She is wrong. SSA is entitled, as are all defendants, to a vigorous defense. That is what counsel provided. Regardless, the examples that plaintiff cites – a motion for leave of court to exceed ten depositions, a motion to amend the complaint, etc. are standard, simple motions which, if counsel is as experienced as stated, required little original work product. Plaintiff's efforts to justify her inflated attorney hours with discussion of protracted discovery battles is similarly unpersuasive. As evidenced in the correspondence set forth in Exhibits 1-5, the majority of the battles were initiated by plaintiff after discovery was stayed and the case was referred to the magistrate for mediation. Plaintiff's request for attorneys' fees in the amount of $133,979 is simply excessive.

Second, regularly billed for attorney time from Piper Rudnick, LLP and the Lawyers Committee for a particular task. The fact that the Lawyer Committee requires assistance from larger law firms to accomplish its goal of representing under-served clients does not justify such double billing. Plaintiff's case was a straightforward, simple employment discrimination case. Billing from multiples attorneys from multiple firms is duplicative and excessive.

Third, plaintiff claims that after making certain adjustments to the lodestar value of attorneys' fees, she made an additional 20% across the board reduction of the fee total. This reduction, however, is insufficient in light of the truly limited victory she achieved in the settlement of her claims. the Court should exercise its discretion to reduce the fee award to be commensurate with the limited success obtained by plaintiff in settlement.

Finally, without authority, plaintiff requests that her counsel from the Lawyers' Committee be awarded <u>Laffey</u> rates for their work on her case. <u>See</u> Fee Petition, p. 15. She requests that her other counsel, Piper Rudnick LLP be compensated at their customary rate. Appendix B of the Local Rules, Rule 3 sets forth the applicable Lodestar guidelines for determining counsel's hourly fee. The fees requested by plaintiff's counsel greatly exceed such guidelines. To the extent attorneys' fees are awarded, they should be calculated consistent with Appendix B of the Local Rules.

## V. **CONCLUSION**

           For the reasons set forth above, defendant respectfully requests that the Court exercise its discretion to award the plaintiff no fees at all. Alternatively, if the court exercises its discretion to award fees, such an award should be reduced to reflect the degree of success obtained in light of the relief originally requested in the complaint. Finally, all excessive, redundant and unnecessary time sought by plaintiff should be eliminated.

        Respectfully submitted,

        Thomas M. DiBiagio
        United States Attorney

                /s/
By:_____
        Nadira Clarke
        Assistant United States Attorney
        6625 United States Courthouse
        101 West Lombard Street
        Baltimore, Maryland 21201-2692
        410-209-4857