**EXHIBIT 1**



*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Thomas M. DiBiagio*
*United States Attorney*

*Nadira Clarke*
*Assistant United States Attorney*

*6625 United States Courthouse*
*101 West Lombard Street*
*Baltimore, Maryland 21201-2692*

*410-209-4800*
*TTY/TDD:410-962-4462*
*410-209-4857*
*FAX 410-962-2310*
*Nadira.Clarke@usdoj.gov*

October 30, 2002

The Honorable Benson E. Legg
United States District Court Judge
Chambers 3D
101 W. Lombard Street
Baltimore, Maryland 21201-2692

    Re:   <u>Jeanette Mellerson v. Joanne Barnhart</u>
           Civil Action No. L-01-2090

Dear Judge Legg:

    The United States has approached counsel for plaintiff in the above-referenced case and indicated a strong interest in pursuing court supervised settlement discussions before a United States Magistrate Judge. The parties are currently engaged in extensive discovery, and one of the primary motivations for pursuing settlement at this juncture is to limit litigation costs, including the possibility of attorneys fees. Plaintiff's counsel will consent to engage in settlement discussions before a United States Magistrate judge provided that (1) the current scheduling order is stayed; and (2) the first mediation session is scheduled within two weeks, and certainly no later than November 29, 2002.

    Accordingly, in light of the genuine interest in settling this case, the parties respectfully request that your Honor immediately refer this case to a United States Magistrate Judge for mediation. Because of the short time frames set forth in the Court's August 8, 2002 Order, and the fact that depositions are scheduled to take place as early as Friday, November 1, 2002 at 10:00 a.m., the parties further request that your Honor stay the Scheduling Order dated August 8, 2002, and advise the parties as soon as possible as to the status of said referral.

    Thank you in advance for your assistance in this matter. If your Honor has any questions, I can be reached at (410)209-4857.

The Hon. Benson E. Legg, p. 2

Alternatively, Plaintiff's counsel can be reached at (410)580-4224 (Jonathan Nash) or (202)319-1000(Carolyn Weiss).

                                Very truly yours,

                                Thomas M. DiBiagio
                                United States Attorney

By: _____
      Nadira Clarke
      Assistant United States Attorney

cc:  Carolyn Weiss, Esq. (Lawyers' Committee)
     Jonathan Nash, Esq. (Piper Rudnick)

**EXHIBIT 2**

**WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS & URBAN AFFAIRS**

November 1, 2002

<u>Via Facsimile and First Class Mail</u>

Nadira Clarke, Esquire
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

Dear Ms. Clarke,

     I am writing to follow up to the message I left for you regarding the cancellation of depositions currently scheduled for next week, beginning November 4, 2002. As I indicated on the message, the court has not yet assigned a magistrate but we have decided not to proceed with discovery on the expectation that mediation will occur in the very near future. It is my understanding from conversations with you that as soon as any of us receives a date for the mediation, we will contact opposing counsel in order to set depositions immediately following the mediation and to resolve any other pending issues.

     Please call me with any questions or concerns. Thank you.

Sincerely,

Carolyn Weiss

cc: Jonathan Nash, Esquire

# EXHIBIT 3



**WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS & URBAN AFFAIRS**

November 5, 2002

<u>Via Facsimile and First Class Mail</u>

Nadira Clarke, Esquire
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

    Re: Mellerson v. SSA Civil No. L-01-2090

Dear Nadira:

We write to formally respond to statements you made during your telephone conversation with Jon Nash on Tuesday, October 29, 2002, regarding the future deposition of Harold Brittingham, the deciding official of the nonpromotion that is the subject of this lawsuit. Although Brittingham's deposition has been postponed, some of your statements were of such concern to us that we have decided to address them immediately.

First, you restated your position that evidence regarding prior discrimination complaints against Harold Brittingham are not relevant to the issue of whether Brittingham discriminated against Ms. Mellerson. That position is contrary to significant legal authority holding that evidence of a pattern of discriminatory decisions by the decision-maker at issue is relevant to prove motive or intent. We direct your attention to some of the many individual disparate treatment cases so holding: *Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) (holding that the district court abused its discretion by refusing to allow the plaintiff to introduce testimony of other alleged harassment victims in order to prove a discriminatory motive for the adverse action); *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990) (affirming the district court's admission of testimony by other victims of similar discriminatory treatment to help establish motive or intent); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417 (7th Cir. 1986) (same); *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524 (11th Cir. 1983) (same); *Harping v. Continental Oil Co.*, 628 F.2d 406 (5th Cir. 1980) (holding that other employees' experiences of discriminatory treatment were admissible to the degree they were not duplicative of statistical evidence presented); *see also Lowery v. Circuit City, Inc.*, 158 F.3d 742 (4th Cir. 1998) (holding that pattern and practice evidence is admissible to raise an inference of discriminatory motive); *Warren v. Halstead Industries, Inc.*, 802 F.2d 746 (4th Cir. 1986) (stating that "evidence of a general atmosphere of discrimination may be considered with other evidence bearing on motive in deciding whether a plaintiff has met his burden of showing that the defendant's articulated reasons are pretextual"); Fed. R. Civ. P. 404(b) (allowing for the admission of other wrongful acts in order to prove motive or intent); *cf.*

11 DUPONT CIRCLE, NW • SUITE 400 • WASHINGTON, DC 20036
(202) 319-1000 (VOICE) • (202) 319-1010 (FAX) • (202) 319-1075 (TDD)

*Huddleston v. United States*, 485 U.S. 681 (1988) (holding that similar act evidence under 404(b) does not need to be proven to be true as along as the jury can reasonably conclude that the act occurred and that the defendant was the actor).

Second, and perhaps more troubling, was your statement that you would instruct Mr. Brittingham not to answer questions during his deposition regarding prior complaints of discrimination lodged against him. Because your breadth and burden objections related to this discovery issue are even more inappropriate grounds for such an instruction than your relevance ground, we will simply address the latter.

As you made clear during the deposition of Ms. Mellerson (when plaintiff's counsel lodged a completely proper objection to a question encroaching upon psychotherapist-patient privileged information and instructed the witness not to answer), you are well aware of the local rules for the District of Maryland and the Federal Rule of Civil Procedure which clearly identify the limited grounds on which one can direct a deponent not to answer. *See* Fed. R. Civ. P. 30(d)(1); Local Guidelines 5-6; *see also Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir. 1977). Relevance is not one of them.

Therefore, we will view any future relevancy objection on this issue (among others, which will be the subject of future discovery-related correspondence) as absolutely specious. Further, we will view any conduct along the lines of instructing deponents not to answer questions about the decision-makers' history of discrimination as improper and sanctionable.

We are confident that once you review the applicable law, your position will change and judicial intervention will be unnecessary. However, if settlement is not reached during mediation and Mr. Brittingham's deposition goes forward, we will want to fully resolve this issue prior to his deposition. As a result, we will expect a representation from you prior to that deposition as to whether you will instruct him not to answer any questions related to his history of discrimination. If your position does not change, we will likely seek judicial resolution of the issue prior to his deposition and further will seek, at a minimum, reimbursement for all costs associated with having to do so.

Sincerely,

Carolyn Weiss

Jonathan Nash

# EXHIBIT 4

**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division

*Thomas M. DiBiagio*
*United States Attorney*

*Nadira Clarke*
*Assistant United States Attorney*

6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

410-209-4800
TTY/TDD:410-962-4462
410-209-4857
FAX 410-962-2310
Nadira.Clarke@usdoj.gov

November 6, 2002

**VIA U.S. MAIL & FACSIMILE**
Carolyn Weiss
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

Jonathan S. Nash
Piper Rudnick
6225 Smith Ave.
Baltimore, MD 21209-3600

Re: <u>Jeanette Mellerson v. Barnhardt</u>,
    Civ. Action No. L-01-2090

Dear Carolyn and Jonathan:

Your recitation of the law regarding the admissibility of certain evidence of patterns of discriminatory decisions to prove motive or intent is informative. However, at this juncture, in light of the Court's stay of discovery and referral of this case to a United States Magistrate Judge for mediation, I see no reason to respond to it. Your demand that I make certain representations prior to presenting Mr. Brittingham for deposition, and your threat to seek judicial intervention and costs in connection with said deposition are similarly instructive. Here too, however, your choice to raise such issues at this time is perplexing.

It was my understanding that we requested a referral for court supervised mediation in this case because there was a genuine desire to evaluate the possibility of settlement at the earliest possible point. The tone of your letter suggests that perhaps your goals have changed. My client is genuinely interested in settling this matter. If your client feels similarly, I would encourage you

Letter to C. Weiss and J. Nash, p. 2

to abandon your personal threats, and instead focus on the issue before us - settlement of this case.

By: _____
Nadira Clarke
Assistant United States Attorney

cc: Mary Ann Zimmerman

# EXHIBIT 5

# WASHINGTON LAWYERS' COMMITTEE
# FOR CIVIL RIGHTS & URBAN AFFAIRS

November 8, 2002

Via Facsimile and First Class Mail

Nadira Clarke, Esquire
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

    Re: <u>Mellerson v. Barnhardt</u>, Civil No. L-01-2090

Dear Nadira,

    This letter is to follow up on your client's discovery responses served on Wednesday, October 30, 2002.[1] Although discovery has been stayed and we are hopeful that mediation will be successful and will moot outstanding discovery disputes, I write at this time regarding certain deficiencies in your discovery responses for two reasons. First, if mediation should fail, we will want to pick up and resolve any outstanding discovery disputes immediately upon the termination of mediation. Thus, by providing you with our compromise position on our discovery requests at this point in time, this should help facilitate a *timely* resolution to the discovery dispute should mediation fail. Second, although we acknowledge that you are under no obligation to provide us with any discovery responses while this matter is stayed, we believe that access to the information requested below (prior to the mediation) will help us more effectively and fairly value our client's case. Otherwise, without access to this information, we have no choice but to assume the worst which will be reflected in our settlement position.

    As an initial matter, and as you will see, in the spirit of compromise and in an attempt to expedite matters, we have more narrowly tailored some of our requests in order to accommodate SSA's concerns about overbreadth and the like. Although the deficiencies outlined below do not represent all of the concerns we have about SSA's discovery responses, the most critical deficiencies and, where appropriate, our revised requests related to them are outlined below.

---

[1] This letter is submitted without waiver of any position that Ms. Mellerson may take should the stay be lifted and this case proceed forward, including, without limitation, the right to compel responses to Ms. Mellerson's discovery requests because the SSA waived its objections by failing to timely serve its responses to Ms. Mellerson's Interrogatory Requests and Requests for Production of Documents.

11 DUPONT CIRCLE, NW • SUITE 400 • WASHINGTON, DC 20036
(202) 319-1000 (VOICE) • (202) 319-1010 (FAX) • (202) 319-1075 (TDD)

**Document Production**

**Request No. 1:** Request No. 1 sought all documents relating to Ms. Mellerson's employment with SSA. In its response, SSA produced only a few recent medical documents and failed to produce Ms. Mellerson's personnel file, stating that it would take at least 6 weeks to locate and produce her personnel file. SSA also objected based on the breadth and burden of the request.

We are troubled by SSA's claim that Ms. Mellerson's personnel file is in St. Louis, Missouri and will take six weeks to retrieve. First, it is unclear why Ms. Mellerson's personnel file would have been shipped to a records warehouse in St. Louis when a charge of employment discrimination has been pending for approximately seven years. Second, although SSA did not specify when this employment record was requested from St. Louis, as of the date of SSA's discovery response, it had already been five weeks since we served our discovery requests. Third, we are confident that there exists a means of expediting such a request, which was apparently not done in this case. Moreover, SSA's objection to the alleged burden of this document request is severely undermined by the fact that most if not all of the requested documents should be in the very personnel file that the SSA has unjustifiably relinquished. We therefore ask that all steps be taken by both you and the SSA to attempt to retrieve the entire contents of Ms. Mellerson's personnel file on an expedited basis. Alternatively, we ask for a more thorough explanation of the need for the delay and any purported inability to expedite production.

**Request Nos. 2, 6, and 15:** Requests Nos. 2, 6 and 15 together seek all documents related to the promotion decision that is at issue in this litigation, including but not limited to all documents reviewed or considered in the decision-making process as well as all notes or other records evidencing the basis for the decision. SSA produced no documents in response to this request. Rather, in SSA's response, you state that in 1998 SSA destroyed the formal promotion file for the promotion at issue in this litigation.

We are deeply concerned by SSA's destruction of the promotion file for the Supply Technician 7 position, notwithstanding its alleged "inadvertence." Ms. Mellerson's charge of discriminatory nonpromotion was pending in 1998, so we are frankly at a loss to understand how this promotion file was "not identified as the subject of a discrimination complaint." Plaintiff is therefore left with no way to know or verify if the entire contents of the file were previously produced through the EEO process, and/or whether we now have the entire contents of the file. Given the severity of this problem, and the fact that SSA wrongfully destroyed the file, at a minimum we ask that an exhaustive search be conducted to locate alternative sources of promotion-related documents, and that any such documents located be produced immediately.

**Request No. 5:** Although SSA did not object to our request for documents regarding Howard Saks's qualification and selection for the Supply Technician 7 position, SSA did not produce his personnel file. Because Mr. Saks was the selectee at issue, Plaintiff clearly is entitled to information regarding Mr. Saks' performance prior to

2

the selection at issue. For example, Plaintiff would be entitled to Mr. Saks' performance evaluations, and documents describing Mr. Saks' responsibilities and duties as a Materials Handler. In fact, Plaintiff's need for and entitlement to such documents is heightened under the conditions presented here – where your client has destroyed the promotion file – because we cannot with any certainty determine what, if anything, from Mr. Saks' personnel file was considered in the selection decision.

To expedite matters, at this time we will modify our initial request to documents contained in Saks' personnel file pertaining to his job responsibilities or performance prior to the selection at issue. Please produce all responsive documents immediately.

**Request No. 11:** Request No. 11 seeks documents relating to prior complaints of discrimination or retaliation that have been made against Harold Brittingham. Defendant has refused to produced any responsive documents, based on objections that this information is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and is both overly broad an unduly burdensome.

As laid out in our November 5, 2002 letter to you, information regarding prior discrimination complaints lodged against Mr. Brittingham, the decision maker here, is both highly relevant and at a minimum discoverable. We understand informally that Mr. Brittingham has a severe and extensive history of discrimination at SSA against African Americans. We are entitled to know the number and specifics of discrimination complaints lodged against him, and your refusal to produce this clearly discoverable information is indefensible. *See, e.g., Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417 (7th Cir. 1986); *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524 (11th Cir. 1983); *Harping v. Continental Oil Co.*, 628 F.2d 406 (5th Cir. 1980); *see also Lowery v. Circuit City, Inc.*, 158 F.3d 742 (4th Cir. 1998); *Warren v. Halstead Industries, Inc.*, 802 F.2d 746 (4th Cir. 1986).

In an effort to accommodate SSA, however, we will limit our request to those documents regarding or relating to grievances or complaints, formal or informal, administrative or judicial, that allege race, age or disability discrimination by Brittingham. Please produce all such documents immediately.

**Request No. 19:** Request No. 19 seeks information about individuals promoted by Harold Brittingham between 1990 and 1995. SSA has refused to produce any responsive documents, objecting on the grounds that the information is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence.

Your objections to this request are untenable. Under Fourth Circuit precedent, pattern and practice evidence of discriminatory employment actions by the relevant decision-maker is not only discoverable but is also admissible to help prove the decision-maker's intent or motive: *See, e.g., Lowery v. Circuit City*, 158 F.3d 742 (4th Cir. 1998); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994); *Warren v. Halstead Industries, Inc.*, 802 F.2d

3

746 (4th Cir. 1986); *Derrickson v. Circuit City*, 84 F.Supp.2d 679 (D.Md. 2000); *see also McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Nonetheless, at the present time, we will seek only documents responsive to our Second Document Request No. 1, which is narrower than Request No. 19. In other words, for the period 1985 and 2000, we will only seek the Best Qualified lists for each promotion decision by Brittingham, the name of the selectee, and the race of all of the people on the Best Qualified list (including the selectee). We will not currently seek information about the employees' age, disability status, position title, grade level, series level, salary or rate of pay before or after the promotion.

**Request No. 22:** Request No. 22 seeks documents related to Harold Brittingham's employment with the SSA. The SSA has not produced any documents responsive to this request and has objected based on relevance, breadth, burden and the improbability that the information will lead to admissible evidence.

Frankly, we are at a loss as to how the employment history of the decision-maker can be described as irrelevant to a complaint about that very decision-maker's employment behavior. Moreover, most if not all of the information requested should be in Brittingham's personnel file, so the objection based on breadth or burden is specious at best.

However, in order to facilitate the discovery process, at the present time we will limit our request to documents from Mr. Brittingham's personnel file regarding his performance, including but not limited to, annual or periodic evaluations, any records of counseling, reprimands or other disciplinary action taken against him, and records related to any complaints of discrimination lodged formally or informally against him.

## Interrogatory Responses

**Interrogatory Nos. 4 and 5:** Interrogatory Nos. 4 and 5 requested information about complaints of discrimination lodged against Harold Brittingham and David Marder, the recommending and selecting officials in this case. Defendant provided no information in response to these interrogatories and objected on grounds of relevance, probability of admissibility, and breadth.

For our response to SSA's objections, refer to our above response regarding Document Request No. 11. At the present time, however, we will limit our request to documents falling within subsections a, d, e, g, and h.

**Interrogatory No. 7:** Interrogatory No. 7 seeks information regarding promotions between 1990 and 1995 for which Brittingham was the selecting or recommending official. SSA did not provide any information and objected based on relevance, ultimate admissibility and burden. More specifically, the SSA explained that it would be difficult to obtain the promotion packages associated with each non-selectee.

      For our response to Defendant's general objections to the disclosure of prior promotion decisions by Brittingham, refer above to our response regarding Document Request No. 19. Nonetheless, we will only seek information about: 1) the names of the individuals on the Best Qualified list for each promotion decision in which Brittingham was the selecting or recommending official between 1990 and 1995; 2) the races of the people on the Best Qualified lists; 3) the name of the selectee for each decision; and 4) the title and grade number of the position being sought. We will presently forgo all information about the applicants who did not make it to the Best Qualified list as well as the age of the applicants who were on the Best Qualified list.

      You may contact me at (202) 319-1000 or Jonathan Nash (410) 580-4224 to discuss these matters. We look forward to your timely response.

                                      Sincerely,

                                      Carolyn Weiss

cc: Jonathan Nash, Esquire

# EXHIBIT 6

 

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

| | | |
|---|---|---|
| *Thomas M. DiBiagio*<br>*United States Attorney*<br><br>*Nadira Clarke*<br>*Assistant United States Attorney* | *6625 United States Courthouse*<br>*101 West Lombard Street*<br>*Baltimore, Maryland 21201-2692* | *410-209-4800*<br>*TTY/TDD:410-962-4462*<br>*410-209-4857*<br>*FAX 410-962-2310*<br>*Nadira.Clarke@usdoj.gov* |

November 14, 2002

**VIA U.S. MAIL & FACSIMILE**
Carolyn Weiss
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

Jonathan S. Nash
Piper Rudnick
6225 Smith Ave.
Baltimore, MD 21209-3600

      Re:  <u>Jeanette Mellerson v. Barnhardt</u>,
            Civ. Action No. L-01-2090

Dear Carolyn and Jonathan:

    I appreciate the discovery compromise proposed in your November 8, 2002 letter. When and if we are unable to reach a settlement in this case, I will promptly respond.

    In the meantime, it was my understanding that we were going to engage in settlement negotiations in order to save on the costs of discovery, minimize attorney fees, and evaluate the possibility of settlement at the earliest possible point. The tone of your letter once again raises a question whether you remain committed to such a process.

    One of the government's main purposes of staying discovery and engaging in mediation was to avoid the time consuming and costly process of collecting information and documents. Your request that I essentially resolve all discovery disputes and supplement the government's responses to discovery at this time is entirely contrary to such a goal. Also of concern is your statement that, should the government refuse to voluntarily produce certain information, you will have "no choice but to assume the worst which will be reflected in [your] settlement position." If

C. Weiss and J. Nash, p. 2

there is specific, discrete information that you require in order to develop a settlement position in this case, please identify it and I will consider your request. Threats are unwarranted, and frankly, inappropriate.

If you have any questions, please do not hesitate to contact me at (410)209-4857. Thank you.

Very truly yours,

Thomas M. DiBiagio
United States Attorney

By: _____
Nadira Clarke
Assistant United States Attorney