**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JEANETTE MELLERSON )
)
)
Plaintiff, )      Civil Action No.: L-01-2090
)
v. )
)
JOANNE B. BARNHART, )
Commissioner )
Social Security Administration )
)
Defendant. )

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER
PETITION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

SSA's opposition to Ms. Mellerson's petition for attorneys' fees – premised on the incredible postulate that Ms. Mellerson is entitled to no fee award whatsoever – is a document long on generalities, but short on legal support and specifics. Ms. Mellerson's monetary award – exceeding $46,000 – can not, under any reasonable view, be considered "nominal," "*de minimis*," or representative of a "Pyrrhic victory," as SSA contends. SSA's secondary arguments – that Plaintiff's counsels' hourly rates and time spent are excessive – do not withstand scrutiny either. As discussed below, and for the reasons set forth in Plaintiff's initial memorandum, Ms. Mellerson's request for attorneys' fees and costs, including the attached supplemental petition for fees and costs related to this reply brief, should be granted in its entirety.

I.    **SSA'S CONTENTION THAT PLAINTIFF IS NOT
ENTITLED TO ANY FEES IS WHOLLY WITHOUT MERIT
AND CONTRAVENES CONGRESSIONAL INTENT**

SSA argues that Ms. Mellerson's fee petition should be denied entirely.  In the
alternative, SSA contends that Ms. Mellerson be awarded 26.6 percent of her fee request because
she recovered only 26.6 percent of the amount claimed as damages in her initial *pro se*
complaint.  *See* Def.'s Opp. at 8-11.  SSA's position contravenes Congressional intent, the fee
shifting provisions of Title VII and relevant case law, *see* Pl.'s Pet. at 5-9, 21, and, accordingly,
should be rejected as meritless.

The vindication of a plaintiff's civil rights cannot be valued solely in monetary terms, as
the deterrent effect of even modest awards serves an important public benefit.  *See* Pl.'s Pet. at 8-
9, 21.[1]  SSA's contention in this regard ignores wholly the cases cited in Ms. Mellerson's
petition which squarely contradict this proposition;  nor does the SSA explain why the rationale
underlying the public policy of awarding full attorneys' fees in civil rights cases should not apply
in this action.  Rather, SSA cites one case in which the plaintiff was awarded only $1 in
damages, *see Carter v. Burch*, 34 F.3d 257, 259, 266 (4th Cir. 1994) (*cited in* Def's Opp. at 8);
and another where the plaintiff received only 35 cents, *see Johnson v. City of Aiken*, 278 F.3d
333, 338 (4th Cir. 2002) (*cited in* Def's Opp. at 8).  Simply put, the awards in these cases bear no
resemblance to Ms. Mellerson's recovery, which far exceeded the amount that she earned in any
single year as an SSA employee, and, thus, the cases are inapposite.  The third case on which

---

[1] SSA's conclusory statement that Ms. Mellerson's case furthered no public or social goal ignores the impact that
Ms. Mellerson's success in this lawsuit inevitably has on the many other African Americans who work for SSA.

SSA relies, *Farrar v. Hobby,* 506 U.S. 103, 114-115 (1992), also is distinguishable. In *Farrar*, a jury found that the plaintiffs failed to prove any actual compensable injury.[2]

SSA's refusal to concede Ms. Mellerson's entitlement to some measure of attorneys' fees is troubling for another reason. SSA's stance violates the spirit, if not the letter, of the parties' settlement agreement, in which SSA stipulated to Ms. Mellerson's prevailing party status for purposes of a subsequent petition for fees and expenses. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) ("It can thus be taken as established . . . that under § 706(k) of Title VII a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances."). SSA made that concession as a condition of settlement. SSA should not be permitted to renege on its contractual obligation.

SSA's fallback proportionality argument – that Ms. Mellerson should be awarded only 26.6 percent of the specific recovery requested in her *pro se* complaint – fares no better. When Ms. Mellerson completed her form complaint, she could not have been expected to know whether punitive damages were available against the federal government, what amount of compensatory damages would likely be awarded to in an individual, non-promotion disparate treatment case in the District of Maryland, or how to accurately calculate the present value of her past and future damages.[3] Given those constraints, it would be unfair and illogical to measure Ms. Mellerson's success by reference to an estimation of damages that she made without the advice and assistance of counsel. Rather, Ms. Mellerson's fee petition should be viewed in the

---

[2] Furthermore, SSA's position overlooks the line of cases supporting fee awards even where no monetary or equitable relief is obtained. *See, e.g., Ganey v. Garrison*, 813 F.2d 650, 651-652 (4th Cir. 1987).

[3] The procedural record supports this point. After entering their appearance, Ms. Mellerson's counsel quickly sought SSA's consent to the filing of an amended complaint that <u>deleted</u> one of the claims asserted in the *pro se* pleading and corrected or clarified other allegations. SSA refused to consent to the filing of the amended complaint, forcing Ms. Mellerson to proceed by motion and incur additional attorneys' fees as a result.

context of the results she actually achieved – full economic relief, substantial compensatory damages and prevailing party status.

## II.    TIME SPENT PURSUING DISCOVERY FOR MEDIATION AND OTHERWISE PROSECUTING PLAINTIFF'S CASE IS FULLY COMPENSABLE

Although SSA challenges the fees associated with Ms. Mellerson's quest for information vital to the valuation of her claim, it neither disputes the discoverability of that information nor defends its failure to comply with its discovery obligations.  Rather, SSA posits that once it proposed mediation, Ms. Mellerson should have ceased all steps toward obtaining this critical discovery.  SSA's position ignores the fact that it failed to concede liability until mediation was underway, and then did so only in response to this Court's statement that it needed either to provide the requested discovery or concede liability for purposes of settlement negotiations. Although SSA could have offered this concession at any time between October 2002 and January 2003, it chose not to do so.  On the other hand, if Ms. Mellerson had not continued to press for information necessary for the valuation of her claim, it is unlikely that she would have obtained such a favorable settlement.  Given the circumstances, the attorneys' fees incurred in connection with Ms. Mellerson's effort to obtain discoverable information are fully compensable.

SSA unconvincingly describes its refusal to consent to Ms. Mellerson's amended complaint and her request that it withdraw its motion for summary judgment as "typical" defense tactics.  *See* Def.'s Opp. at 3 and n.2.  Even if accurate, SSA's characterization provides no defense to Ms. Mellerson's request for fees incurred as a result of SSA's litigation strategy.  *See, e.g., Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 766 (D. Md. 2001) ("a defendant who requires the plaintiff to expend substantial time in responding to multiple motions can hardly be heard to complain as to the amount of time spent on responding to such motions.").

### III.     THE TIME EXPENDED AND THE RATES APPLIED ARE REASONABLE

Without specificity or substantiation, SSA charges that significant amounts of time billed by Ms. Mellerson's counsel is "excessive or otherwise unnecessary." *See* Def's Opp. at 12.  As this Court has made clear, however, if SSA is to successfully challenge Ms. Mellerson's fee petition as excessive, it must identify specific items or tasks for which compensation should be denied in whole or in part.  *See Thompson v. United States Department of Housing and Urban Development*, Civ. Action No. MGJ-95-309, 2002 U.S. Dist. LEXIS 23875, at *39-41 (D. Md. Nov. 21, 2002) (defendants cannot make "sweeping assertions" about alleged defects in a plaintiff's fee petition and demand "wholesale reductions;" rather, they must identify "specifically" the challenged entry and give "an adequate explanation for the basis of that challenge"); *see also Wright v. Department of Agriculture of the State of Maryland*, Civ. No. HM84-1603, 1986 U.S. Dist. LEXIS 20395, at *7 (D. Md. Sept. 15, 1986) (commenting on the defendant's failure to specifically identify the alleged deficiencies in the plaintiff's fee petition).

In this case, SSA has failed to identify a single item of dispute.  Instead, it lodges a general attack on the fees based on the coordination of effort between Piper Rudnick L.L.P. and the Washington Lawyers' Committee.  *See* Def.'s Opp. at 12.  However, as other courts have recognized, the model of co-counseling employed by the Committee necessitates such coordinated efforts, which are compensable.  *See, e.g., Porter v. USAID*, Mem. Op., Civ. Act. No. 00-1954 at 16 (Nov. 25 2003) (Robertson, J.) (attached) ("Plaintiff correctly asserts that 'WLC can only fulfill its mission by meeting with co-counsel and coordinating efforts to vindicate plaintiffs' civil rights.'"); *see also Gu*, 127 F. Supp. 2d at 767 (in holding that time spent in conferences between two firms working on the case was compensable, court observed that such coordination was "necessary for the effective representation" of the plaintiff); *cf.*

*Colonial Williamsburg Foundation v. Kittinger Co.*, 38 F.3d 133, 139 (4th Cir. 1994). To the degree that the joint representation by the Committee and Piper Rudnick resulted in any duplication of effort, the petition reflects the sound exercise of billing judgment to eliminate associated fees, *see* Plaintiff's Petition at Ex. J-3 and K-2, and, in a further abundance of caution, applies a twenty percent across-the-board discount to ensure that the fees requested were calculated in a truly conservative manner.

SSA's argument that Ms. Mellerson's attorneys' hourly rates are unreasonable is similarly without merit. Regarding the *Laffey* rates requested by the Committee, Ms. Mellerson does in fact cite authority—including authority in this Court—demonstrating that *Laffey* rates are accepted market rates in this district. *See Thompson v. United States Department of Housing and Urban Development*, 2002 U.S. Dist. LEXIS 23875 at *35, *48-51 (*cited in* Plaintiff's Pet. at 18). Equally perplexing is Defendant's claim that *Laffey* rates in this case would "greatly exceed" the guidelines set forth in Appendix B of the Local Rules. *See* Def.'s Opp. at 13. As noted more generally on page 18 of Plaintiff's Petition, the current *Laffey* rate for Susan Huhta is $270/hour, for Carolyn Weiss is $220/hour and for Brandi Brown is $175/hour. The current guideline range for Ms. Huhta is $200-$275, for Ms. Weiss is $150-$225 and for Ms. Brown is $135-$170. Given that Ms. Huhta's and Ms. Weiss's *Laffey* rates are within the guidelines established as presumptively reasonable by the District Court of Maryland, and Ms. Brown's *Laffey* rate is a mere $5 above the guidelines, Defendant's argument that the *Laffey* rates requested are excessive falls flat.

Contrary to SSA's assertions, Ms. Mellerson also cited authority supporting an award based on Piper Rudnick's standard rates. S*ee* Pl.'s Pet. at 16-17. *See also Smith v. Continental Casualty Co.*, Civ. No. WDQ-02-3049, 2003 U.S. Dist. LEXIS 19945, at *16-18 (D. Md. Oct.

27, 2003) (granting fee award based on attorneys' customary rates in an ERISA case).[4]

Moreover, Ms. Mellerson attaches the Declaration of Stephen B. Lebau, Esq., a lawyer

practicing in Baltimore who specializes in employment law and civil rights litigation, attesting

that the rates requested by Piper Rudnick are in line with local market rates charged by attorneys

of comparable skill, experience and background.  *See* Exhibit A;  *see also Buffington v.*

*Baltimore County, Maryland*, 913 F.2d 113, 129 (4th Cir. 1990) (affirming the use of such

affidavits to support an award based on the firm's customary rates); *Daly v. Hill*, 790 F.2d 1071,

1080 (4th Cir. 1986) (same); *Wright*, 1986 U.S. Dist. LEXIS 20395 at *9-10 (same); *cf. Smith*,

Civ. No. WDQ-02-3049, 2003 U.S. Dist. LEXIS 19945, *16-18 (same).  *See also Blum v.*

*Stenson*, 465 U.S. 886, 895 n.11 (1984) (describing the submission of evidence in addition to the

attorney's own affidavits to establish rates prevailing for similar services by comparable

lawyers).

## IV.    PLAINTIFF IS ENTITLED TO SUPPLEMENTAL ATTORNEYS' FEES AND COSTS RELATED TO DRAFTING THIS REPLY BRIEF

Plaintiff is entitled to recover attorneys' fees and costs for the work completed by her

counsel in responding to Defendant's Opposition to Plaintiff's Petition for Attorneys' Fees and

Costs.  As recognized by this Court in *Thompson v. United States Department of Housing and*

*Urban Development*, Civ. Action No. MGJ-95-309, 2002 U.S. Dist. LEXIS 23875, at *22 (D.

Md. Nov. 21, 2002), "it is a well-established principle in this circuit" that plaintiffs in civil rights

and discrimination actions "are entitled to recover reasonable attorney's fees incurred in

connection with prosecuting [a] fee petition motion."  *See, e.g., Trimper v. City of Norfolk, Va.*,

58 F.3d 68, 77 (4th Cir. 1995) (Time spent defending entitlement to attorneys' fees in civil rights

action is compensable);  *Ganey v. Garrison*, 813 F.2d 650, 652 (4th Cir.1987) (stating that

---

[4]  Appendix B of the Local Rules applies to ERISA cases.  *See* Appendix B to the Local Rules at n.1.

"'[t]ime spent defending entitlement to attorneys' fees is properly compensable in a § 1988 fee award.'") (quoting *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir.1986)); *see also* Appendix B to the Local Rules at 77 (Delineating litigation phases into which attorneys' fees applications in civil rights and discrimination cases must be divided, and specifically including "fee petition preparation" as one such phase). Accordingly, and incorporating the arguments made in Plaintiff's initial Petition for an Award of Attorneys' Fees and Costs, Plaintiff requests a supplemental award of attorneys' fees in the amount of $3,036 and expenses in the amount of $127.93 incurred in drafting this reply brief. *See* Exhibit B (Declaration of Tracey Gann Turner); Exhibit C (Supplemental Fees for which Piper Rudnick Is Seeking Compensation); Exhibit D (Piper Rudnick's Supplemental Costs/Expenses); Exhibit E (Declaration of Susan E. Huhta); Exhibit F (Supplemental Fees for which the Washington Lawyers' Committee Is Seeking Compensation); Exhibit G (Supplemental Fees for which the Washington Lawyers' Committee Is Not Seeking Compensation).

## CONCLUSION

Congress enacted the fee-shifting provision to ensure that plaintiffs would be encouraged, and that knowledgeable and experienced attorneys would be willing, to pursue meritorious civil rights cases. As this Court has recognized, the fee-shifting statute's purpose of attracting competent counsel is brought into greatest relief in cases with relatively small potential recoveries. This is because prior to the enactment of the fee-shifting legislation, "effective legal representation shied away from the minimal monetary prospects of civil rights cases." *Gu*, 127 F. Supp. 2d at 766. Ms. Mellerson's case is a perfect example of Congressional intent realized. The representation afforded her should be compensated accordingly. For these reasons, Plaintiff Jeanette Mellerson should be awarded full attorneys' fees in the amount of $137,015 ($133,979

plus $3,306 in supplemental fees related to drafting the reply brief) and expenses in the amount

of $3,865.93 ($3,738 plus $127.93 in costs related to drafting the reply brief).

Respectfully submitted,


_____/s/_____
Tracey Gann Turner (Bar No. 07371)
Amy Beth Leasure (Bar No. 26731)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000
Facsimile (410) 580-3001

Susan E. Huhta (Bar No. 14547)
Carolyn P. Weiss (Bar No. 15563)
Washington Lawyers' Committee
   for Civil Rights & Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C.  20036

Attorneys for Plaintiff,
Dated: January 23, 2004          JEANETTE MELLERSON