IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEANETTE MELLERSON, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. L-01-2090 |
| JOANNE B. BARNHART,<br>Commissioner, Social Security Admin., | : | |
| Defendant. | : | |
| : : : : : : : | | |

**<u>MEMORANDUM</u>**

The parties have consented to me entering a final judgment disposing of the remaining issues in this case, which are limited to Plaintiff's petition for attorneys' fees and costs (Paper Nos. 52 and 61). Defendant has filed an opposition. (Paper No. 58). The dispute has been fully briefed, and the parties have not requested a hearing, nor is one required by Local Rule 105.8. Accordingly, the petition now is ripe for ruling.

Pursuant to 42 U.S.C. § 2000e-5(k), Plaintiff seeks an award of attorneys' fees and costs for the successful resolution of claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, as amended , 29 U.S.C. § 621 et seq. ("ADEA"), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 ("Rehabilitation Act"). Specifically, Plaintiff seeks fees for the work completed by the Washington Lawyers' Committee for Civil Rights and Urban Affairs (the "Committee"), and the Baltimore office of Piper Rudnick LLP ("Piper Rudnick"), both of which are counsel of record in this case.

In total, Plaintiff seeks $140,561.73.[1] In arriving at this figure, Plaintiff used two different methods of calculation. With respect to the Committee, a Washington, D.C. based nonprofit civil rights organization, Plaintiff is seeking *Laffey* rates.[2] On behalf of Piper Rudnick, a Baltimore based firm employing almost 1000 attorneys in offices throughout the country, Plaintiff seeks customary market rates. Accordingly, based on their respective calculations, Plaintiff seeks reimbursement in the amount of $37,592.80 for the Committee's work,[3] and $102,968.93 for Piper Rudnick.[4]

Having considered the filings and arguments offered by counsel, Plaintiff's petition for attorneys'

---

[1] In addition to the $133,979 in attorneys' fees, and $3,738 in costs incurred throughout this dispute, this figure includes supplemental fees and costs in the amount of $2,844.73, which were incurred in filing the reply brief in support of her petition. It should also be noted that Plaintiff filed an amended exhibit correcting a computation error regarding the number of *hours* she sought fees for. The total monetary figure requested, however, did not change. (Paper No. 53).

Additionally, Plaintiff's reply brief misstated the amount being requested in connection with the work completed by the attorneys on the reply brief. While the text of the brief requested a total of $3,865.93 in costs and fees, a careful reading of the attached affidavits and contemporaneous timesheets reveals the accurate figure totals $2,844.73 in fees and costs. This includes the Committee's request for $1,276.80 (based fees in the amount of $1,596, reduced by 20 percent), and Piper Rudnick's request of $1,440 (based on fees in the amount of $1,800, reduced by 20 percent) and $127. 93 in costs. (*See* Paper No. 61 at 9; *see also* Paper No. 61, Exh. 2, ¶ 5 and Exh. 5, ¶ 6).

[2] The *Laffey* Matrix was established, and is updated, by the Department of Justice, to reflect the prevailing market rate for attorneys in the Washington D.C. area by years of practice pursuant to *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516 (D.C.Cir. 1988) (*en banc*). *See also Thompson* v. *United States Department of Housing and Urban Development*, 2002 WL 31777631 n. 4 (D.Md. 2002).

[3] This figure includes $35,540 for work completed, and $776 in costs incurred through the filing of the original petition. It also includes $1,276.80 for the Committee's work on the reply brief.

[4] This figure includes $98,439 for work completed, and $2,962 in costs incurred through the filing of the original petition. It also includes $1,440 for Piper Rudnick's work on the reply brief, and $127.93 for costs incurred in filing the reply.

fees and costs is granted in part, and denied in part.[5]  Specifically, for the reasons explained below, Defendant is ordered to pay a total of $105,522.15 -- $32,313.06 to the Committee, and $73,209.09 to Piper Rudnick.

## Discussion

In pertinent part, 42 U.S.C. § 2000e provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000(e)-5(k) (2004).  Thus, where a plaintiff is a prevailing party under the statute, he or she is entitled to an award of attorney's fees and costs.

For context, a brief recitation of the background facts in this case is helpful.  In 1994, Plaintiff, Jeannette Mellerson, then a 13-year veteran of the Social Security Administration ("SSA"), applied for a promotion from a GS-5 to a GS-7 position.  SSA denied her promotion and in her place appointed a non-disabled white male under forty.[6]  Plaintiff contends he was less qualified than she.  Subsequently, Ms. Mellerson filed an administrative complaint alleging employment discrimination.  The complaint remained in administrative limbo for more than six years, until Ms. Mellerson filed this lawsuit *pro se*

---

[5] See Attachment A for exact breakdown.  The award will be based on the document filed by Plaintiff in response to the Court's May 7, 2004 order that a chart, detailing by attorney name and years of practice, the number of hours for which compensation is requested. (Paper Nos. 65 and 66).

[6] Plaintiff suffered from a leg cramp condition, and in 1991 was reassigned from her WG-5 Motor Vehicle Operator position to a GS-5 Supply Technician. (Paper No. 58 at 2).  It appears from the filings that this physical limitation is alleged to have contributed to Defendant's decision not to promote Plaintiff to the GS-7 position at issue in this litigation.

3

against the SSA on July 17, 2001. Taking more than a year-and-a-half to respond to the complaint, the SSA, in February 2003, filed a motion to dismiss, or in the alternative a motion for summary judgment.[7] Ms. Mellerson then contacted the Committee, who in turn enlisted the assistance of Piper Rudnick. Both entered their appearances on May 6, 2002 and cooperatively represented Ms. Mellerson. On August 8, 2002, an expedited discovery schedule was established, requiring all discovery to be completed by December 15, 2002.

After prolonged negotiations, presided over by the Court, the SSA and Ms. Mellerson eventually entered into a settlement agreement, whereby the SSA agreed to pay $46,618 of Plaintiff's original $175,000 demand for damages.[8] Both the settlement agreement and a consent order were filed with the Court, and Plaintiff submitted her petition for attorneys' fees in accord with 42 U.S.C. § 2000(e)-5(k). It is for these services she seeks compensation. It is undisputed that the entry into a settlement agreement and issuance of a consent order made Plaintiff a prevailing party for purposes of seeking attorneys' fees and costs.

In opposition to Plaintiff's petition, Defendant submits three arguments. First, that Plaintiff's victory is pyrrhic or *de minimus*, and as such, Plaintiff's petition should be denied. The second argument involves five letters sent to and from opposing counsel following the parties' consent to

---

[7] In its brief, Defendant takes pains to identify for the Court Plaintiff's failure to respond timely to Defendant's motion to dismiss. (Paper No. 58 at 4). In light of Defendant's belated response to Plaintiff's lawsuit, however, Defendant hardly holds the procedural high ground in this argument.

[8] Plaintiff's original complaint, filed pro se, sought damages in the amount of $175,000. Upon retaining the Committee and Piper Marbury, Ms. Mellerson's amended complaint deleted certain claims originally asserted. In the amended complaint, Plaintiff did not specify an exact monetary figure in the request for damages. (Paper No. 30).

4

mediate before a magistrate judge. (Paper No. 58 at 5-6). (*See also* Paper No. 58, Exhs. 2-5). Specifically, Defendant asserts that Plaintiff's requests for discovery after the parties had informally agreed to a "stay" requires the Court either to deny Plaintiff's petition in whole, or in the alternative, "greatly reduce" Plaintiff's award. Lastly, Defendant argues that Plaintiff's fees, if awarded, should be calculated using Appendix B of the Local Rules for the District of Maryland, Rule 3. For the reasons stated in this opinion, the Court disagrees with Defendant's first argument, and agrees with its second and third.

**A. Prevailing Party**

As provided in 42 USC § 2000e-5(k) a plaintiff, first and foremost, must establish that he or she is the prevailing party to seek an award of an attorneys' fees and costs petition. A plaintiff is a prevailing party if "actual relief on the merits of the claim[,] that materially alter the legal relationship between the parties by modifying [a] defendant's behavior in a manner that produces a direct benefit to [the] plaintiff[,]" is achieved. *See Thompson*, 2002 WL 31777631, *3 (D.Md. 2002). *See also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001); and *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

In this case, Title VII's fee-shifting provision clearly states that a prevailing party is entitled to attorney's fees and costs. Specifically, 42 U.S.C. § 2000e(5)(k) provides: "[i]n any action or proceeding under this title the court, in its discretion, may allow the prevailing party a reasonable attorney's fee." Here, the settlement agreement filed with the Court directly addresses the issue, stating: "[F]or purposes of resolving Plaintiff's claim for attorney's fees and costs ... Plaintiff will be deemed a prevailing party." (Paper No. 52, Plaintiff's Petition, Ex. I, ¶ 7).

5

Acknowledging that the terms of the settlement agreement concede that Ms. Mellerson is a prevailing party, Defendant simultaneously argues that it merely permits her to petition for an award of attorneys' fees and costs. It does not, Defendant states, mandate that fees in fact be awarded. While it is true that *de minimus* or technical victories do not meet the threshold requirement for an award of attorney's fees, the Court is unpersuaded by Defendant's assertion that the outcome arrived at in the settlement agreement is a settlement in name only. *Farrar*, 506 U.S. at 115; *see also Buckhannon Bd. and Care Home*, 532 U.S. at 604. The facts speak otherwise. Upon settlement, the SSA paid Ms. Mellerson $46,618. Encompassing Plaintiff's back pay, compensatory damages and front pay for the duration of her expected life span, the award hardly is a *de minimus* or technical victory. Furthermore, given the fact that during settlement negotiations Defendant's initial offer of $25,000 increased over 85% by the time the case was settled indicates otherwise – Plaintiff succeeded in "modifying the defendant's behavior in a way that produce[d] a direct benefit to [her]."[9] *Farrar*, 506 U.S. at 111-12. Accordingly, based on the facts, the Court finds that Ms. Mellerson is the prevailing

---

[9] Defendant argues in the alternative, but without citing any authority, that if the Plaintiff is deemed entitled to receive an award of fees, the amount sought through the filing of Plaintiff's original petition, $137,717, should be reduced by 73.4% in order to coincide with the percentage of the plaintiff's settlement award, which was 26.6% of her initial request for damages. Such an argument has been rejected by the Fourth Circuit. In a recent case involving a plaintiff's request attorneys' fees pursuant to 42 U.S.C.§ 1988, one of the civil rights/discrimination claims to which the fee-shifting provision is applicable, the Court held that when a plaintiff's "*only* success against [the defendant] [is] obtaining an award of *nominal* damages, ... the only appropriate [attorneys' fees] award ... [is] none at all." *Johnson v. City of Aiken*, 278 F.3d 333, 339 (4th Cir. 2002) (emphasis added). Defendant's reliance on cases bearing no factual similarity to this case, such as the one discussed above, does not provide a basis for denying Plaintiff's petition. (*See* Paper No. 58, Defendant's Opposition at 8 (citing *Carter v. Burch*, 34 F.3d 257, 259, 266 (4th Cir. 1994) (where plaintiff was awarded $1 in damages and subsequently was denied prevailing party status); and *Johnson,* 278 F.3d at 338 (where plaintiff only received $.35 in damages)).

party for purposes of this fee petition.

**B. The Lodestar Calculation**

Pursuant to 42 U.S.C. § 2000e, the Court is granted the authority to award reasonable attorneys' fees.  The reasonableness of the fees requested is determined by ascertaining the "lodestar" amount, which is the number of hours reasonably expended on the litigation multiplied by an hourly rate that also is reasonable.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Once established, this figure will denote a reasonable fee for purposes of Plaintiff's petition.[10]  In determining the lodestar amount, the trial court examines the 12 factors stated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 216, 226 (5th Cir. 1974), and adopted by this circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).  They are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Further, the trial court, in its discretion, is charged with determining which of these factors are most pertinent to establishing a reasonable fee in a particular case.  *Daly v. Hill*, 790 F.2d 1071, 1075-76

---

[10] Where a plaintiff seeks enhanced attorneys' fees on the basis of having achieved an exceptional result, different factors are considered. *Buffington v. Baltimore County, Md.*, 913 F.2d 113 (4th Cir. 1990), *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780 (D.Md. 2000). Here, Plaintiff is not seeking an enhanced award. Thus the Court, in determining whether the requested amount is reasonable, will consider whether the rates used by the plaintiff in arriving at the figure are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputations." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984).

(4th Cir. 1986). As applied in this case, I conclude that the most pertinent factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the skill needed to properly perform the legal services required by the case; (4) the preclusion of other employment; (5) the customary fee; (9) the experience, reputation and ability of the attorneys; and (10) the undesirability of the case.

1. *Time and Labor Required, Novelty and Difficulty of the Issues, and Skill Needed.*

The body of law encompassing the employment discrimination claims brought by Plaintiff - Title VII, the ADEA and the Rehabilitation Act - is best described as complex. Defending or prosecuting such claims often requires substantial fact investigation, command of the prevailing theories and ever-changing case law, and a thorough understanding of the subtle nuances and complexities it embodies. Thus, under the best circumstances, succeeding in a Title VII case is legally challenging. Where, however, the defendant, a large government agency, engages in conduct, whether intentionally or by inadvertence, that prolongs the efforts of a *pro se* plaintiff to resolve her claim, resulting in additional labor and expense, it becomes clearer that significant time, labor and skill are required if a Plaintiff is to prevail. In this case, the record demonstrates that this dispute was contentious, requiring the parties to spend considerably more time and effort resolving unnecessary obstacles. The record shows numerous discovery disputes, which required additional resources and efforts by counsel, whether it be in the form of correspondence with opposing counsel in an effort to resolve issues without requiring the Court's involvement, or time spent drafting and filing written motions and memorandums with the Court.[11] And, ultimately, the majority of these disputes were decided in Plaintiff's favor.

---

[11] For instance, rather than agreeing to withdraw its motion for summary judgment, which had been filed before counsel had entered their appearance and before discovery had commenced, Defendant refused, thereby requiring Plaintiff to prepare and file an opposition motion. Chief Judge

Thus, while Plaintiff's claim may not be novel, nor the issue it presents exceedingly difficult, it nonetheless required both skill and substantial time to resolve. Accordingly, I find that this a significant factor in determining a reasonable attorneys' fees award.

2. *Experience, Reputation and Ability of the Attorneys, and the Undesirability of the Case.*

As demonstrated throughout the filings in this case, Plaintiff's counsel clearly are experienced in civil rights litigation, and both the Committee and Piper Rudnick are respected in the field. The Committee, formed 35 years ago to meet the growing needs of individuals needing assistance in preserving their rights under recently enacted civil rights legislation, has consistently secured favorable outcomes for clients subjected to unlawful civil rights infringements. (Paper No. 52 at 14). As the Committee's non-profit status limits its ability to staff the firm in a manner that permits it to independently handle all aspects of complex cases, the services of a private firm were required to meet this case's demands. *Id*. Piper Rudnick, a nationally recognized, Baltimore-based firm, agreed to assist for what must have been recognized at the outset to be a largely *pro bono* exercise. As noted previously, both firms simultaneously entered their appearance, and having seen this case through to a successful completion, have demonstrated commendable skill and legal competence.

With respect to the undesirability of the case, the facts demonstrate that few lawyers would "jump" at the chance to take on this case. Faced with unforgiving economic demands in a very

---

Legg subsequently denied Defendant's motion for summary judgment as premature. (*See* Paper No. 23). In addition, after Plaintiff obtained counsel, Defendant refused to consent to her request that she be permitted to file an amended complaint. In response to Defendant's unreasonable position, Plaintiff was forced to file a contested motion for leave to file a first amended complaint, which was granted by the Court the day it was filed. (Paper No. 29).

competitive profession, any firms balk at representing clients where neither a retainer is provided nor the reasonable expectation of a contingency fee is available. Adding to the undesirability of this case is the fact the defendant is a large government organization that receives skilled legal representation at no expense, and has abundant resources to litigate.

Accordingly, these factors are relevant in determining the amount of reasonable fees.

3. *The Preclusion of Other Employment*

As discussed above, because the Committee's resources are limited, its ability to accept cases diminishes with each new matter it undertakes. (Paper No. 52, Plaintiff's Petition, at 15). Thus, unlike in large firms, accepting one case precludes the Committee from accepting another.[12] For instance, while representing Plaintiff, the section of the Committee devoted to handling EEOC issues received 1,500 requests from other individuals seeking assistance. *Id*. Further, significant portions of the Committee's resources were consumed by this case during the time that this case has been pending. *Id*. Accordingly, by virtue of representing Plaintiff, the Committee has been precluded from providing assistance to many other individuals needing help.[13]

4. *The Customary Fee and Awards in Similar Cases.*

Appendix B of the Local Rules, Rule 3, which set forth the applicable Lodestar guidelines used in awards for attorneys' fees, are deemed presumptively reasonable. *Thompson*, 2002 WL 31777631,

---

[12] This is not to suggest that preclusion from other employment is a prerequisite to an award of attorney's fees. Rather, when a firm is precluded from other employment due to its involvement with a particular client, this is relevant to calculating the amount of a reasonable fee.

[13] The Committee provides representation on a strictly *pro bono* basis.

*8 (D.Md. 2002). Plaintiff, however, has sought fees using two different calculations. Specifically, *Laffey* rates are being sought for the Committee, and market rates are requested for Piper Rudnick. With regard to the Committee, Plaintiff cites numerous cases from the D.C. Circuit to support its request that the Court deviate from the applicable guidelines contained in Appendix B. See e.g., *Blackman, et al. v. District of Columbia, et al.*, No. 97-1629, 200 U.S. Dist. LEXIS 20970 (D.D.C. 2000); and *Trout v. Vall*, 705 F. Supp. 705 (D.D.C. 1989). While these cases may be instructive, they do not dictate the outcome here. Unlike this District, the District of Columbia's Local Rules do not provide Lodestar guidelines. Instead, the federal courts in the District of Columbia rely on *Laffey* rates, which were approved for use in civil rights cases, as their "guideline." *Laffey*, 746 F.2d 4 (D.C.Cir. 1984).

With respect to *Laffey's* applicability in the District of Maryland, Plaintiff's cite *Thompson v. HUD* as precedent for a departure from the Lodestar guidelines. However, in *Thompson*, a case which involved allegations that the government had engaged in nearly a century of discrimination on the basis of race in public housing, the plaintiffs demonstrated that only two firms would agree to take the case.[14] Merely establishing that a case is "not one that would generally attract the private bar," is insufficient to support a departure from the guidelines. (Paper No. 52, Plaintiff's Petition at 8). More accurately, in order to warrant an award based on *Laffey* or market rate calculation, the prevailing party must make a factual showing that no other firm was willing to take the case. *Thompson*, 2002

---

[14] The plaintiffs in *Thompson* petitioned for attorney's fees and costs on behalf of the ACLU, a non-profit civil rights organization, and Jenner and Block, a private Washington, D.C.-based firm. Specifically, the then current U.S. District Court for the District of Maryland Lodestar guidelines were sought for the ACLU, and *Laffey* rates were requested for Jenner and Block.

11

WL 31777631, *12 (D.Md. 2002) *citing Montcalm Pub. Corp. v. Virginia*, 199 F .3d 168, 173 (4th Cir. 1999) (*quoting Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994)). Here, there has been no such showing. Accordingly, it is appropriate for any award of fees in this case to be determined using the applicable Lodestar guidelines as provided in Appendix B of the Local Rules of this Court.

**C. Principles Governing the Calculation of Reasonable Attorneys' Fees.**

1. *Specificity Required.*

It is well-established that the prevailing party bears the burden of demonstrating, with specificity, the amount of attorneys' fees that should be awarded. Typically this comes in the form of detailed time sheets containing an itemized list of hours and expenses, and a short description for each entry explaining how the time was spent. *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 97-98 (4th Cir.1993). Plaintiff in this case has done just that. By submitting the requisite information in a manner that facilitates review, the Plaintiff has fulfilled the specificity requirement and enabled the Court both to determine the validity of each individual claim for fees and the propriety of the overall request.[15]

The specificity obligation, however, cuts both ways. Just as the plaintiffs are required to provide the Court with sufficiently detailed records to support an award, defendants also must comport with a specificity requirement and are required to "specify with particularity the basis for their

---

[15] Plaintiff submitted charts detailing the individual charges she seeks compensation for as well as charts detailing the charges she does not seek. In each chart, Plaintiff has provided a line-item accounting of each charge, along with a description identifying the work completed giving rise to the charge.

objection." *Thompson*, 2002 WL 31777631, *9 (D.Md. 2002) *citing Stacy v. Stroud*, 845 F. Supp. 1135 (S.D.W.Va.1993). As stated in *Thompson v. HUD*, "bare assertions by the defendants that certain requests were seemingly excessive are insufficient grounds to disallow time properly spent." *Thompson*, 2002 WL 31777631, *8 (D.Md. 2002). Defendant's objections in this case fail to meet the requirement of specificity. Instead, its objections are, with one possible exception, entirely generalized and unspecific. Coming under the expansive heading "Plaintiff Has Failed to Comply with the Requirements for an Award of Fees, Her Fees are Excessive, and Many of the Fees Plaintiff Seeks are Not Recoverable," Defendant devotes less than two pages to "particularizing" its objections. More specifically, within a mere one and a half pages, Defendant addresses the specificity *and* billing judgment requirements of the principles governing the calculation of fees *and* the appropriateness of the rates *and* the percentage reduction of hours being sought by Plaintiff. Further, the one instance where Defendant cites actual exhibits in support of the contention that Plaintiff's request is without merit falls short of meeting the particularity requirement. Referring the Court to five exhibits, which include correspondence regarding the state of discovery after the parties agreed to participate in mediation, does not help this Court evaluate the validity of the blanket objections proffered in Defendant's motion. Instead, Defendant's failure to "identify specific items or tasks for which compensation should be denied in whole are in part" fails to provide the Court with meaningful guidance regarding the challenged time entries. Notwithstanding the generality of Defendant's objections, the Court conducted an independent review of the time records detailing the work completed on or around the dates Plaintiff delivered the correspondence in question. Of the five letters referenced by Defendant, the Court finds that the fees incurred and requested as a result of preparing the letter written on Committee letterhead

13

and dated November 8, 2003, are unreasonable considering the parties previously had agreed to "stay" discovery pending the outcome of mediation efforts. In this letter, written one week after the decision to mediate was reached, Plaintiff informed Defendant that "... providing [Defendant] with [Plaintiff's] compromise position on [its] discovery requests at this point in time ... should facilitate a timely resolution to the discovery dispute should mediation fail." (Paper No. 58, Defendant's Opposition, Exh. 5, ¶ 1). Clearly, at the time the letter was written, Plaintiff's counsel's conduct was at cross-purpose to the objective of attempting to minimize additional costs by staying discovery pending the outcome of mediation. Defendant, however, has failed to identify for the Court the fees it contends Plaintiff unreasonably is seeking in connection with this letter. As a result, the Court has reviewed the time sheets submitted by Plaintiff and has identified 5.1 hours of time for which Plaintiff seeks compensation as a result of preparing the letter in question.[16] Accordingly, Plaintiff's award will be

---

[16] *See* Paper No. 52, Exhs. J-2 and K-1. Under the caption "Written Discovery," in Exhibits J-2 and K-1 to Plaintiff's Original Petition, the work completed for the following entries is not compensable:

A. Exhibit J-2

| Date | Timekeeper | Activity | Hours |
|---|---|---|---|
| 11/04/02 | Weiss, C | Draft discovery deficiency letter | 0:36 [minutes] |
| 11/05/02 | Weiss, C | Revise ltr to AUSA re: deficiencies in responses ... | 2:00 |
| 11/06/02 | Huhta, SE | Edit discovery dispute draft letter to AUSA | 0:30 [minutes] |
| 11/06/02 | Weiss, C | Revise letter to N. Clarke re: discovery response ... | 0:18 [minutes] |
| 11/06/02 | Weiss, C | Review letter from N. Clark re: discovery dispute | 0:06 [minutes] |

B. Exhibit K-1

| Date | Attorney | Description | Time |
|---|---|---|---|
| 11/06/02 | Nash, J. | Conference with C. Weiss [re:] discovery disputes ... | 0.30 |
| 11/07/02 | Nash, J. | Review and revise discovery letter to N. Clarke ... | 0.80 |
| 11/08/02 | Nash, J. | Revise letter to N. Clarke [re:] discovery ... | 0.50 |

reduced by $748.60.[17]

2. *Billing Judgment*

Defendant's objection to Plaintiff's exercise of billing judgment is contained in a single, three-sentence paragraph, in which Defendant overlooks the fact Plaintiff excluded from its fee petition more than 330 hours of attorney work, and almost 60 hours of paralegal and intern work. Defendant again makes generalized assertions without reference to specific entries in the timesheets submitted in support of Plaintiff's petition. Plaintiff, however, as described above, submitted detailed records. Reviewed in conjunction with Plaintiff's filings in this case, it becomes clear that billing judgment was exercised. For example, no fees were sought for certain attorneys, law clerks or paralegals who worked on the case, or for time spent by the Committee on research related to pattern and practice evidence, and where appropriate, more junior attorneys were used to complete work in an effort to minimize costs. Additionally, Plaintiff decreased its already reduced request for fees by an additional 20 percent. Commendable billing judgment has been exercised.

3. *Appropriate hourly rates.*

As previously addressed, Plaintiff's contention that this case is "not one that would generally attract the private bar," is insufficient to support a departure from the guidelines. Consequently, its request for an award based on *Laffey* rates for the work completed by the Committee and customary market rates for Piper Rudnick is unsupported. Therefore any award of fees will be based on the presumptively reasonable rates provided for in Appendix B of the Local Rules, Rule 3. Accordingly,

---

[17] See attached Chart for details.

the rates applicable for work completed are:

>(a) Lawyers admitted to the bar for less than five years: $135-170; (b) Lawyers admitted to the bar for five to eight years: $150-225; (c) Lawyers admitted to the bar for more than eight years: $200-275; (d) Paralegals and law clerks: $90.

>4. *Percentage Reduction of Hours Sought.*

As explained, the Court is charged with assessing the reasonableness of Plaintiff's request. This requires the Court to conduct an independent analysis of the fee applications submitted by Plaintiff to determine whether an award of attorney's fees and costs is in fact appropriate. Thus, the Court must be satisfied that, in addition to demonstrating that the relevant *Johnson* factors support an award of fees and costs, the petitioning party has exercised billing judgment and fulfilled the specificity requirement. In making this determination, the Court is granted wide discretion; and where it is determined that a plaintiff's fee application, in whole or in part, contains vague or duplicitous entries, the Court is required to reduce the award requested to a figure that is deemed reasonable. *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir.1986), *see also Thompson*, 2002 WL 31777631, *9 (D. Md.2002). This often is accomplished by reducing entire fee applications, or portions thereof, by a particular percentage.

As discussed above, the Court notes that Plaintiff independently has applied a 20 percent across-the-board reduction to its award request. Any further across-the-board reduction by the Court would be unwarranted.

## Conclusion

Based on this Court's review of both parties' briefs and Plaintiff's accompanying time records and affidavits, Plaintiff's request for attorneys' fees is granted. Applying the applicable rates to Plaintiff's original petition request of $140,561.73 requires that the award be reduced by $35,039.58.

Defendant is ordered to pay $105,522.15, which comprises Plaintiff's compensable attorneys' fees and costs. The specific calculations used by the Court to arrive at this figure are detailed in Attachment A to this memorandum and order, and are incorporated by reference herein.

Accordingly, it is this 18th day of June, 2004 ORDERED that Plaintiff's petition for attorneys' fees and costs is GRANTED in the amount of $105,522.15, and judgment is entered in favor of Plaintiff.

A separate Order shall issue.

> _____/s/_____
> Paul W. Grimm
> United States Magistrate Judge